**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

DENOTRA EDWARDS,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
　　　　Plaintiff,　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　　　　　　)　　3:10-CV-209-RCJ-RAM
　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)　　**ORDER**
TAHOE PACIFIC HOSPITAL,　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
　　　　Defendant.　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
_____

　　　　Currently before the Court is Defendant Tahoe Pacific Hospital's Motion to Dismiss (#7). The Court heard oral argument on June 6, 2011. Plaintiff Denotra Edwards, *pro se*, did not appear.

**BACKGROUND**

　　　　On May 6, 2010, Plaintiff filed a complaint in this Court against Defendant. (Compl. (#5)). Plaintiff's complaint is comprised of the following: (a) a form entitled Civil Rights Complaint Pursuant to 42 U.S.C. § 1983; (b) a 17-page handwritten narrative of the events at issue; (c) a Dismissal and Notice of Rights from the U.S. Equal Employment Opportunity Commission ("EEOC"); (d) a letter from the Nevada Equal Rights Commission ("NERC"); and (e) a Tahoe Pacific Hospital Employee Counseling Record. (*See generally id.*).

　　　　The civil rights complaint form is blank except for a request for back pay since termination. (*See id.* at 1-9). Plaintiff's handwritten narrative alleges the following. (*Id.* at 13). Plaintiff, a nursing assistant, was wrongfully discharged. (*Id.*). She was subjected to "constant harassment" because her supervisors, Marla and Lisa, would change her schedule without telling her. (*Id.* at 17-18). Plaintiff's supervisors would write her up for missing schedules and

then refuse to send Plaintiff's version of the events to the corporate offices. (*Id.* at 18-19). On August 31, 2008, Plaintiff noticed that, in the computer system, she had been identified as requesting time off even though her supervisors had called her off duty. (*Id.* at 13, 19-20). Marla and a woman named Cathy always made comments around her that made her feel uncomfortable. (*Id.* at 21). For instance, on September 1, 2008, Cathy, in reference to a man's tee-shirt that said, "I eat it," stated, "It's a shame it don't say 'I eat pussy.'" (*Id.*). Both Marla and Cathy turned to look at Plaintiff after Cathy said that. (*Id.*). Later, Marla and Lisa accused Plaintiff of "saying things about the nurses." (*Id.* at 22). Marla accused Plaintiff of telling people that she was going to go to Truckee, where Marla lived, and burn Marla's house down. (*Id.*). Plaintiff stated that she could not believe what she was hearing and asked, "Why would I say such a thing?" (*Id.* at 23). Marla responded "that's what [she] heard." (*Id.*). As a result, Marla and Lisa suspended Plaintiff until further notice. (*Id.*). In response, Plaintiff stated that she was going to speak to personnel. (*Id.*). Marla and Lisa told her she had to first go through the chain of command, thus, requiring Plaintiff to speak to the new Director of Nursing who had a "problem talking to black people." (*Id.*). Plaintiff chose to speak to Human Resources instead. (*Id.*). Catherine in HR told Plaintiff to "watch [her] mouth" and reminded Plaintiff of her "yearly review which suddenly was sub standard." (*Id.* at 24). Plaintiff received her review that morning. (*Id.*). Plaintiff was eventually terminated for threatening to burn down Marla's house. (*Id.* at 25).

      The Employee Counseling Record, dated September 8, 2008, stated that Plaintiff was terminated for the following reasons. (*Id.* at 12). On August 26, 2008, Plaintiff was suspended for "rude and unprofessional conduct directed at coworker and failing to give proper notice for a call off." (*Id.*). During her counseling session, Plaintiff agreed to apologize to the staff member and make an effort to resolve her anger toward nursing leadership. (*Id.*). On August 31, 2008, Plaintiff failed to honor her agreement by reporting to work "extremely angry," throwing schedules and papers at the nurses' stations, using profanity at Marla and Lisa, and telling staff members more than once that she was going to go to Truckee and burn down one of the nursing supervisor's home. (*Id.*). Plaintiff was suspended on September 1, 2008,

1  pending an investigation. (*Id.*). On September 2, 2008, Phil and Catherine met with Plaintiff
2  to hear her perspective and to explain to her that they would conduct an investigation in which
3  the results would determine her future with Tahoe Pacific Hospital. (*Id.*). Based on the results
4  of the investigation, the hospital terminated Plaintiff based on a history of unprofessional
5  conduct and language directed at the nursing leadership. (*Id.*).

6       A letter from the NERC, dated December 18, 2009, stated the following. (*Id.* at 11).
7  The NERC had received Plaintiff's intake paperwork on August 6, 2009. (*Id.*). Plaintiff's
8  paperwork indicated that her last day of work was October 9, 2008. (*Id.*). Someone at NERC
9  had misread the paperwork and thought that Plaintiff's last day of work was October 9, 2009,
10 and set her case for mediation. (*See id.*). However, at mediation, the parties discovered the
11 incorrect date. (*Id.*). The NERC concluded that both the NERC and the EEOC lacked
12 jurisdiction over her case. (*Id.*). In order for NERC to have jurisdiction, a complaint must have
13 been filed with them within 240 days of the date of harm. (*Id.*). In order for the EEOC to have
14 jurisdiction, a complaint must have been filed with them within 300 days from the date of harm.
15 (*Id.*). Plaintiff discovered her termination on September 11, 2008, and filed her paperwork with
16 NERC on August 6, 2009. (*Id.*). Because there was a total of 329 days between the date of
17 harm and her filing, neither the NERC nor the EEOC had jurisdiction over her claim. (*Id.*).
18 Accordingly, NERC closed her case for lack of jurisdiction. (*Id.*).

19      The document from the EEOC, dated January 14, 2010, stated that it had "adopted the
20 findings of the state or local fair employment practices agency that [had] investigated [the]
21 charge." (*Id.* at 10). The EEOC dismissed Plaintiff's case and issued her a right-to-sue for 90
22 days. (*Id.*).

23      On April 12, 2010, Plaintiff filed an application for leave to proceed *in forma pauperis*
24 and attached her complaint. (*See* Appl. for Leave (#1)). Judge McQuaid issued an order
25 directing Plaintiff to provide more information regarding her financial status. (*See* Order (#2)).
26 On May 6, 2010, Plaintiff paid the $350 filing fee in full. (Docket Entry # 3). Judge McQuaid
27 issued an order stating that Plaintiff was not proceeding *in forma pauperis* and directed the
28 clerk to file the complaint. (Order (#4) at 1).

**LEGAL STANDARD**

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true all factual allegations in the complaint as well as all reasonable inferences that may be drawn from such allegations. *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1150 n.2 (9th Cir. 2000). Such allegations must be construed in the light most favorable to the nonmoving party. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). In general, the court should only look to the contents of the complaint during its review of a Rule 12(b)(6) motion to dismiss. However, the court may consider documents attached to the complaint or referred to in the complaint whose authenticity no party questions. *Id.*; *see Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).

The analysis and purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (quotations omitted). To avoid a Rule 12(b)(6) dismissal, a complaint does not need detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Clemens v. Daimler Chrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)); *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (stating that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Even though a complaint does not need "detailed factual allegations" to pass muster under 12(b)(6) consideration, the factual allegations "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, ___ U.S. at ___, 129 S.Ct. at 1949. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual

4

enhancements.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. at 1966).

If the court grants a motion to dismiss a complaint, it must then decide whether to grant leave to amend. The court should "freely give" leave to amend when there is no "undue delay, bad faith or dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

## DISCUSSION

Defendant moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Mot. to Dismiss (#7) at 1). Defendant argues that the complaint is devoid of any allegations that support a 42 U.S.C. § 1983 claim because Plaintiff fails to allege what state or local actor violated her rights, whether the individual was acting in his or her individual capacity, how Defendant was acting under color of law, what civil or constitutional rights Defendant violated, and how Defendant violated such rights. (*Id.* at 2). Additionally, Defendant argues that Plaintiff cannot state a § 1983 claim because the hospital, a private entity, is not a state or local entity. (*Id.* at 3). Defendant contends that Plaintiff is precluded from filing a Title VII or state discrimination claim because she failed to timely exhaust her administrative remedies. (*Id.* at 3-4). Defendant asserts that the Court should dismiss the complaint with prejudice because Plaintiff cannot amend her complaint to allege a timely exhausted state or federal claim. (*Id.* at 4).

In response, Plaintiff requests a continuance and appears to add Catherine Winoski, Marla Avidano, and Lisa Noud as defendants. (Opp'n to Mot. to Dismiss (#9) at 1). Plaintiff asserts that these "defendants" more than the hospital itself committed the violations because they harassed her. (*Id.* at 1-2). Plaintiff asserts that her termination was race related because she was "American-Black" and the new head nurse, who has since been dismissed, had a hostile attitude toward minorities. (*Id.* at 2). Plaintiff contends that Marla Avidano had been moved to the day shift after making another sexual remark to a white, female pharmacy

worker. (*Id.*). Plaintiff asserts that Marla was given the opportunity to quit, instead of being terminated, because Marla was white. (*Id.*). Plaintiff states that she was given the right to sue because of NERC's paperwork mix-up. (*Id.*).

Defendant replies that Plaintiff failed to address the § 1983 issue. (Reply to Mot. to Dismiss (#10) at 1). Defendant asserts that Plaintiff is barred as a matter of law from filing a Title VII claim because she failed to timely file with the NERC and EEOC. (*Id.* at 1-2).

### A. 42 U.S.C. § 1983

Section 1983 of Title 42 provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983. "Section 1983 does not create any substantive rights, but is instead a vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Id.* "Individuals and private entities are not normally liable for violations of most rights secured by the United States Constitution." *Morse v. North Coast Opportunities, Inc.*, 118 F.3d 1338, 1340 (9th Cir. 1997). "In order to maintain a cause of action based on an allegation of constitutional violations, a plaintiff must show that the actions complained of are 'fairly attributable' to the government." *Id.*

In this case, Defendant Tahoe Pacific Hospital is a private hospital owned by Life Care Hospitals. (*See* Tahoe Pacific Hospital at http://www.lifecare-hospitals.com/hospital.php?id=13). Plaintiff has not alleged how any actions by this privately-owned hospital are fairly attributable to the government nor does it appear that she can. Accordingly, the Court grants the motion to dismiss Plaintiff's § 1983 claims without leave to amend.

### B. Title VII

"Title VII establishes two potential time limitations periods within which a plaintiff must

file an administrative charge with the EEOC." *MacDonald v. Grace Church Seattle*, 457 F.3d 1079, 1081 (9th Cir. 2006) (citing 42 U.S.C. § 2000e-5(e)(1)). "Generally, a Title VII plaintiff must file an administrative charge with the EEOC within 180 days of the last act of discrimination." *Id.* at 1081-82. "However, the limitations period is extended to 300 days if the plaintiff first institutes proceedings with a 'State or local agency with authority to grant or seek relief from such practice.'" *Id.* at 1082. Because of NERC, Nevada is a deferral state for Title VII purposes. *See Laquaglia v. Rio Hotel & Casino, Inc.*, 186 F.3d 1172, 1174 (9th Cir. 1999). "If the EEOC does not bring suit based on the charge, the EEOC must 'notify the person aggrieved' that she can file suit." *Surrell v. California Water Service Co.*, 518 F.3d 1097, 1104 (9th Cir. 2008) (citing 42 U.S.C. § 2000e-5(f)(1)). The notice is accomplished through a right-to-sue letter. *Id.* Once a person receives an EEOC right-to-sue letter, she has 90 days to file suit. *Id.*

In *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), the U.S. Supreme Court held that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Id.* at 393, 102 S.Ct. at 1132. "Equitable estoppel and equitable tolling can extend the deadline for filing when equity so requires." *Sommatino v. United States*, 255 F.3d 704, 710 (9th Cir. 2001).

The Ninth Circuit has not addressed the specific factual situation in this case, i.e. whether a plaintiff who files an untimely charge with the EEOC may file a lawsuit in district court after the EEOC issues her a right-to-sue letter. However, the First Circuit has addressed this issue. In *Mercado v. Ritz-Carlton San Juan Hotel*, 410 F.3d 41 (1st Cir. 2005), the plaintiffs undisputedly filed their EEOC charges outside of the 300-day time period. *Id.* at 44. The EEOC, without making either a determination on the merits or a finding on timeliness, issued all of the plaintiffs right-to-sue letters. *Id.* After plaintiffs filed a joint lawsuit, the defendant filed a motion to dismiss based on the plaintiffs' untimely EEOC charges. *Id.* The First Circuit held that a defendant does not waive the timeliness defense by failing to bring the issue to the attention of the EEOC when the EEOC issues right-to-sue letters without reaching

7

the merits of the plaintiffs' claims. *Id.* at 45. A defendant may properly raise the timeliness issue in an answer or motion to dismiss. *See id*. With respect to tolling, the First Circuit held that the plaintiffs in that case were entitled to a factual development of their equitable tolling claim and vacated the district court's dismissal based on untimeliness. *Id.* at 43-44.

Here, the facts in this case are similar to the facts in *Mercado*. Plaintiff filed an untimely discrimination charge with both the NERC and the EEOC. (*See* Compl. (#5) at 11). The EEOC did not reach the merits of Plaintiff's case, agreed with the NERC, and issued Plaintiff a right-to-sue letter. (*See id.* at 10). Plaintiff then initiated proceedings in federal court within the 90-day right-to-sue period. (*See id.* at 10; *see* Appl. for Leave (#1)). Defendant then properly raised the issue of timeliness in its motion to dismiss. Because Plaintiff has not raised any facts in her complaint explaining why she filed an untimely EEOC charge, the Court grants the motion to dismiss Plaintiff's Title VII claims based on untimeliness without leave to amend.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that Defendant's Motion to Dismiss (#7) is GRANTED in its entirety without leave to amend.

The Clerk of the Court shall enter judgment accordingly.

DATED: This 5th day of July, 2011.

_____
United States District Judge